Good morning, Illinois Appellate Court. First District Court is now in session in the Third Division. The Honorable Justice Margaret McBride presiding. Case number 17-1964, People v. Eddie Miles. Good morning, everyone. Morning. Morning. We are proceeding via Zoom in light of the COVID. And our procedures for orals have been slightly modified. What we allow for each attorney is about 10 minutes of uninterrupted argument. And after that, we will pose questions to the attorneys. I am joined today by Justices Ellis and Justice Burke. Before we begin, I'd like to also let the attorneys know that we have a law school class that is listening to the arguments. And it's an appellate advocacy or practice class, I should say. So they're listening in. I'm sure they'll be interested to see the oral arguments by both attorneys. So before we begin, I would ask the attorneys to identify themselves by name, and then we will begin proceeding. So for the appellant. Yes, good morning, Your Honors. My name is Kieran Weiberg. I'm with the Office of the State Appellate Defender, and I'm here today representing Eddie Miles. Good morning, Mr. Weiberg. And for the State's Attorney's Office. Good morning, Rita Stotz from the State's Attorney's Office for the People. Good morning, Ms. Stotz. So each of you, as I indicated, will have about 10 minutes for your oral argument. From that, Mr. After that, Mr. Weiberg, you may save some time for rebuttal. And I'd like you both to know that we are familiar with the facts of the case, at least as as it was presented at trial. So if you want to emphasize the arguments involving the post-conviction petition at issue, that would be great. But know that we do have some familiarity with the facts and, of course, the record on appeal. So with that, Mr. Weiberg, you may begin. All right. Thank you, Your Honors. And may it please the court. As Your Honors are obviously aware, we are here on appeal from the second stage dismissal of Eddie Miles post-conviction petition. Specifically, we have argued that Mr. Miles made a substantial showing that he was denied the effective assistance of counsel at his trial, where his attorney failed to investigate and therefore failed to discover that the complaining witness in that case, Miss Marianne Cole, actually had pending federal fraud and bribery charges, both at the time of the alleged robbery incident and at the time that she testified at trial. Pardon me. Now, as Your Honors are aware, the briefing in this case is really resolved down to two issues. And those two issues are either A, was this evidence admissible to impeach Miss Cole? And B, if so, was the failure to do so prejudicial? And obviously we answer both of those questions. Yes. As far as there is no in this particular instance, we don't really have some of the strategic considerations we might sometimes have simply because counsel in this case did file an affidavit in which he stated that had he known about these pending charges, he would have used them to impeach Miss Cole at trial. So this was not by any means a strategic decision. This was clearly simply a matter of he did not discover this. Now, as to that first question, whether or not this evidence was admissible to impeach Miss Cole, it was. Now, pending charges are not admissible in impeachment in the way that, for example, a prior conviction. Prior conviction is used to attack a defendant or a witness's character. However, as the Supreme Court has held in cases like People v. Lucas and the cases cited therein, such pending charges can be used for impeachment where they go to a witness's interest, motive or bias while testifying. And that is exactly what we have in this case. Miss Cole had a powerful motive to present herself and to present the situation in a particular manner when she was testifying at trial. Specifically, Miss Cole was in the thick of a federal prosecution for multiple bribery and fraud charges. She actually went to trial a little less than a year after the trial in this case. And that means she knows she's dealing with federal prosecutors. She knows she's going to be potentially dealing with a federal sentencing judge. And she knows she may face some very serious consequences. And, Your Honors, that means that she wants a couple of things. First of all, she wants to appear sympathetic. And I don't think it's a stretch to say that any of us would find a 66-year-old woman being robbed sympathetic. I imagine most of us would find anyone being robbed sympathetic. It's an unfortunate thing to happen to someone. Equally, she has some motive to present herself as someone who's being helpful to a prosecution, who's being helpful to law enforcement, even granted in a different jurisdiction. And further, she also has an image that she does not want to convey. For her, she does not want a federal prosecutor or a federal sentencing judge to be looking at her as someone who wasted judicial resources, wasted prosecutorial resources, wasted law enforcement resources, and had an innocent man thrown in jail for an extended period of time simply because she overreacted to what amounts to a little more than a common sidewalk mishap. So, Ms. Cole has several motivations related to her pending charges to testify in a particular manner. And I would like to address briefly, Your Honors, in its response brief, the state put forward a little bit of what I would call a straw argument insofar as they suggested that in order for this court to find a Mr. Miles favor, Your Honors would have to conclude that Ms. Cole had concocted this entire scheme to frame Mr. Miles and did so at the very moment that she first felt someone bump her and cried out. And that is by no means necessary, and it's not a contention that we are by any means relying upon. At the time that this incident first occurred, in that first moment, even taking Mr. Miles' testimony as gospel truth, as 100%, Ms. Cole could have, reasonably or otherwise, believed that a robbery was actually what was taking place. I mean, she's an older woman. She's walking out of the grocery store. She has a large, a fairly large amount of cash in an envelope with her. She feels somebody knock into her. She sees the envelope on the ground. She sees somebody reaching for it. I mean, in that moment, we could imagine a person could misunderstand, could panic, and could think, oh, my gosh, I'm being robbed here. But we're not concerned so much from Mr. Miles' perspective with what was happening at that moment. What we're concerned about is what's happening at the time that this all comes to trial. And at the time that this comes to trial, Ms. Cole has had plenty of time to think about her situation. She's had plenty of time to think about what she's going to say when she gets up there and testifies. And she's had plenty of time to think about what she wants those federal prosecutors, that federal judge, to see, a victim or someone who basically wasted a significant number of judicial resources. And so, Your Honors, for those reasons, this evidence did go to Ms. Cole's motive, and therefore it was admissible as impeachment evidence. When we talk about prejudice in this case, the first thing that we think is very important to note is that the evidence in this case was actually quite close. Specifically, we had two plausible accounts of the events that happened that day. Ms. Cole says, you know, somebody walked up behind me, they knocked into me, I saw their hand go into my purse, and they grabbed my envelope, but then they threw it on the ground and they left. Which is believable. It is basically, it's not contrary to our general experience, it's something we could believe would happen. Equally, Mr. Miles said, hey, I was walking out of the grocery store, I wasn't really paying attention to what I was doing, I bumped into some lady and I saw some papers on the ground, so I bent down to pick them up, and all of a sudden she starts screaming. And I'm a black man with a criminal record in a white neighborhood. I figure this is not going to end well for me and I left. And again, this is not implausible. This is something that we could imagine happening. This is basically a reasonable account of what under that assessment would be a misunderstanding. So neither of these accounts are particularly implausible, and that is precisely where credibility becomes key in this case. And it is exactly that credibility that Ms. Cole's pending charges influenced. And on this point, your honors, I do think it's also important to note the standard here. Mr. Miles is not compelled to show that he would definitely be acquitted if this impeachment testimony had been allowed. What Mr. Miles is required to show is that he has made a substantial showing that there is a reasonable probability, what this court has before referred to as a better than negligible chance, that the outcome of the trial would have been different. And given the importance of credibility in this case, given the importance of Ms. Cole's testimony, and given the existence of two plausible accounts of what happened, that very clearly could have made that reasonable probability, that better than negligible chance, that the outcome of the trial is different. And your honors, to that point, I would also note the state leaned very heavily in their briefs on the testimony of Ms. LaRoche, who was a second witness who saw some of what occurred here and saw Mr. Miles and chased Mr. Miles, apparently. And your honors, we would note that the mere fact that Ms. LaRoche is an independent witness does not necessarily indicate that everything that she said is exactly correct. And as your honors are, of course, well aware, this isn't about referring to Ms. LaRoche as a liar. As this court has observed many times, it's not unusual for several witnesses to the same event to see things and remember things in a somewhat different way. And we have to remember Ms. LaRoche is approaching, she sees somebody bump into an older woman, she hears the older woman scream, she's reaching certain conclusions right from the beginning about what's happening here. That can color the way you remember things and that can color the way that you see things. So while a jury could have found Ms. LaRoche's testimony to be a compelling corroboration of Ms. Cole's, they are not by any means required to do so, and a reasonable jury certainly could wonder if all of these witnesses weren't, for lack of a better term, if the truth did not lie somewhere in between the various differing accounts that we had of this event, particularly noting that, for example, Ms. LaRoche did not see anything in Mr. Miles' hands, although we know he had several items with him. We have Ms. Cole's account, which again is generally plausible, however, the account of Mr. Miles grabbing the envelope, taking a few steps and then stopping and turning, looking at her, I believe she said rolling the envelope in his hand or fingering the envelope in some fashion, and then throwing that very same envelope down on the ground and running away, it's not impossible, but it's not exactly what we would normally expect to see happen in a robbery. Ordinarily, one would expect you grab the envelope full of money and you run. You certainly don't grab the envelope, stop, wait for a minute, and then abandon the envelope that you did all that to get. So while a reasonable jury could believe Ms. Cole's account, it is not so persuasive that evidence that impeached her credibility could not have been effective. And so, Your Honors, with that, I will reserve whatever time I have left and take whatever questions Your Honors might have. All right. So at this time, I will ask Justice Ellis, do you have some questions you'd like to pose to Mr. Weiberg? Sure. I have a few, yes. Thank you, Mr. Weiberg, for your presentation. Good morning. Morning. You had a Brady violation claim that was part of the post-conviction in the trial court, is that right? Yes, that's correct. And you've not advanced that on appeal? That is correct, yes. Okay. If we were to agree with you and remand it for advancement to the third stage, you could continue to push any of the claims in your petition, is that right? Your Honor, I suppose that it would be possible that the post-conviction court could allow that. Generally speaking, a reversal at second stage doesn't operate in the same sense that a reversal at first stage does, which revives all claims because there's no such thing as a partial summary dismissal. I see. You may be right about that, counsel. Okay. I want to ask you about the standard of review here. Generally speaking, when we review a second stage, it's de novo review, right? Yes, correct. But if we were reviewing this on direct appeal, which is definitely a different situation, but if we were reviewing this on direct appeal and you had tried to put in this evidence at trial and the trial judge said, no, I don't think it's admissible, I think it's more prejudicial than probative, I think your theory is too far-fetched, what have you, we would be reviewing that for an abuse of discretion, right? Yes, Your Honor. In that case, you would. So here we have a trial judge at the second stage basically making that ruling, right? He said, I don't think this evidence would be admitted. I would not admit this evidence. Isn't that essentially what the trial judge said? Roughly speaking, yeah. That was the gist of it. Roughly speaking. And so how does that work for us? Are we supposed to revisit that ruling de novo and say what we would have done? Or if we think that a trial judge could have reasonably excluded this, do we affirm under even a de novo review? I'm sorry, how do those two standards of review interact in your opinion? Well, what I would say is that in a circumstance like this, one of the things that's important to that standard of review is also the stage of proceedings that we're in and the relief that is being sought, which is to say at this stage of review, if your honors agree with us and reverse and remand this, Mr. Miles does not get a new trial. Mr. Miles goes back and he has an evidentiary hearing and that post-conviction judge will have an opportunity to make a ruling ultimately on whether or not he should receive the new trial that he is seeking. In this case, I would say that yes, the de novo review is particularly appropriate because we're not seeking that entirely new trial. We're seeking further proceedings and we are simply asking your honors to address that legal question of could this have been admissible evidence and is there that showing, again, assuming all of the facts are true and everything else that occurs at the second stage, just addressing that purely legal issue. I understand, but nevertheless, the trial judge has already given its conclusion, at least the post-conviction court has already given its conclusion that this evidence would not be admissible. If we reverse and remand for third stage, is there any reason to believe the judge is going to have a different take on the admissibility of this evidence? Well, your honor, as to that point, I would also note regarding the trial court's decision here, at least my reading of the trial court's decision was really relying more on two factors. The fact that this was not the same jurisdiction and the fact that it was not an actual conviction. And we would say that even on an abuse of discretion review, relying on those two factors in order to find this evidence inadmissible would be erroneous because the mere fact that it is not a conviction, as we said, we're not seeking to use it in the sense that one uses a prior conviction. And the mere fact that these are charges that are pending in a different jurisdiction does not, in and of itself, render this evidence inadmissible. And so I think that it is possible that with clarification on those legal issues, the trial court might well reach a different conclusion. So if I am reading the trial court's decision correctly, I would say that even had it reached that opinion on direct appeal, that would have been an abuse of discretion because it would have been legally erroneous. So do we have to come to the conclusion that it was legal error to find that this evidence was admissible? Is that ultimately what you're asking us to do here? It sounds like it. I think that there was legal error here. I think that, again, at this stage, this being a second stage proceeding and the fact that we are not seeking a new trial, we are seeking a third stage hearing, I would say that under precedent, it is still de novo review. And I understand the point that Your Honor is making, and I think there are some interesting questions there. I would still say that at this point, although I do believe there is legal error there, even if it were simply a matter of this court would balance it differently, at this stage, because it is de novo, that should still leave this court to go ahead and reverse. All right. Thank you, counsel. I appreciate it. Justice Burke, do you have some questions? I do. Mr. Weiberg, good morning. How are you? Good morning. Very good. Your basic hook to get this thing back into court is an ineffective assistance at counsel claim, correct?  Okay. So do most defense counsels have access to federal records when they are preparing for trial? Well, Your Honor, to that point, I would say that counsel here didn't need that. If we look at the material that was actually submitted in favor of the original pro se petition, for example, we have newspaper articles from 2007 talking about the fact that this witness was facing these federal charges. If the attorney had performed a simple Google search on the complainant's name, they very well would have come up with information to let them know, hey, there's something out here that I should be taking a look at. So I don't know if they would ordinarily have that, but in this case, they didn't need it, I would say. Okay. That was my next question, if there was a public record of it. And it's your position that the trial court erred in saying that the evidence would be invisible. Is that correct? So it's two parts. It's not just ineffective assistance of counsel. It's also that the trial court erred in a legal interpretation. Well, the trial court reached that legal interpretation in ruling on the ineffective assistance of counsel claim. So I would say, again, had this been presented at trial, we would have a slightly different situation. But in this case, we are arguing that counsel wasn't effective precisely because this evidence was admissible. The state, of course, has argued that it was not, and therefore, counsel could not have been ineffective for failing to present it. Your basis of saying it's admissible is the fact that it was a fraud charge, and it goes directly to her trustworthiness. Is that correct? No, Your Honor, that is not. In this particular instance, that would be similar to the way we use a prior conviction to impeach someone. And in this particular instance, because there isn't a conviction, we would not say that we could use it to attack her character. Rather, this is evidence that we would be seeking to use to go to her interest, motive, and bias in testifying, particularly her motive to ensure a conviction, to make herself look like a victim, to garner sympathy from federal authorities, and to avoid the appearance of being someone who has really wrongfully accused someone and improperly wasted judicial resources. So it's under her motive and bias for testifying. Okay. All right. Thank you, Mr. Weiberg. You're welcome. Mr. Weiberg, I have a couple of questions. Were we looking at this as a right to confront witnesses? Given that there are numerous cases in Illinois that would indicate that the defense has the right to cross-examine and to impeach a witness based on an arrest, the general rule regarding convictions for the impeachment of the credibility of a witness is there and well-established. But it's also well-established that if we were looking at this as a right to cross-examine, there's a lot of cases that would suggest that the defense attorney should have had the right to cross-examine, certainly if this were a state arrest. Now, some of the cases seem to suggest that there's maybe a distinction with the fact that this was a federal charge. How do you respond to that? Well, Your Honor, I think the fact that this is from a foreign jurisdiction, so to speak, it really just goes into a part of the analysis of how does this impact this person's motivation, which is to say, obviously, we might say that there is an even more direct connection where you have a state prosecution where you might well be dealing with the very same state authorities on your pending charges that you are dealing with in the charges in which you are now the complainant. We might say that that would have an even more heightened reason for you to want to please those powers that be and to act in a manner that will have them look favorably upon you. But we would say that that is not a necessary condition. It might be a sufficient condition, but it's not necessary. Because the basic instinct of almost any person when they're in trouble, and whether they're in trouble with one person or another, is to try to garner sympathy. And that is ultimately what we think is at issue here. We're not talking about making a deal with federal authorities here. What we're talking about is simply presenting oneself as a helpless older woman, a victim, someone who has been wronged, something that will garner some sympathy from a sentencing judge or from a federal prosecutor and make them look at least a little bit more kindly upon you. And again, as opposed to that appearance of being someone who has wasted resources and accused an innocent man, which is obviously not a good perception. Well, both parties cited the Triplett case. And in that case, the Supreme Court was fairly firm about the idea that arrests, that involved the arrests of a juvenile or actually juvenile pending cases. So in this case, and in Triplett, the court said that there has to be an inference shown that the witness has something to gain or lose. And is that what you're arguing here? Yes. That this witness has something to gain or lose. Isn't that really the bottom line? Yes, Your Honor. That is, I would say, the heart of our argument here is that she has something to gain or lose by the way this case turned out and the way she testified. What about the fact that she was subsequently convicted and sentenced to 30 months imprisonment? How would that shake out if this were to go back? Would it still be just the arrest or does that really matter for your purposes today? Well, Your Honor, if this, I guess I'll do my best to answer that in two parts. If this were to go back to an evidentiary hearing, at an evidentiary hearing, I don't imagine that that would be relevant because we're still considering the circumstances as they existed at the time of trial. Now, if this were to go back for a new trial, at that point, I would imagine that defense counsel could present these as prior convictions that attack the witness's credibility because she has now been convicted and we now have that judicial determination of guilt. So I would say that an evidentiary hearing, that fact would not necessarily come into play. Were this to go to a new trial, I think counsel would be able to admit this evidence and to argue, you can take this as to the witness's credibility just as far as her character. All right. I don't have any other questions, but I'll ask, I'll turn back again to Justice Ellis. Any further questions? No further questions. Thank you. And Justice Burke? No, thank you. All right. So with that, Mr. Weidberg, you will have some time for rebuttal. And now we will hear from Ms. Schatz. Good morning again. Your Honor, I want to start by highlighting what seems to be some shifting theories in this case. The only theory of motive to lie that defendant outlined in his appellate brief was that Ms. Cole had a motive to lie because she would appear sympathetic to the federal prosecutors if she testified against defendant. Now, we disagree because this isn't, for one thing, this isn't the type of serious life changing offense that might theoretically make a prosecutor take it easy on a defendant. Ms. Cole was not injured. She was not knocked to the ground. And she wasn't even out any money because defendant dropped the envelope and she was able to recover it. So we'd ask the court to limit defendant to this evoking sympathy theory, which is all that he's briefed. He mentioned a couple of different theories just now. One is that she wanted to make herself look helpful to law enforcement. And the other is that there was some kind of concern that she would appear to have wasted resources. Neither of those are outlined in the brief. So we'd ask the court to hold the petitioner to what he has briefed. And as for the wasted resources, it's unclear how that would even come to the federal prosecutor's attention that this theory is not fleshed out. Apparently, the idea would be that Ms. Cole maybe called police but didn't testify. So it's unclear what that is. We'd ask the court to hold defendant to the theory that just testifying that you're a victim of a crime makes you sympathetic to federal prosecutors. And it's our position that that's not anywhere near the type of motive to lie that would allow Ms. Cole to be impeached with this pending charge. The defendant also mentioned that we had made a straw man argument, and I think that's incorrect. We were responding to exactly what defendant argued in the trial court in front of the post conviction judge. His attorney argued that as soon as this incident happened, Ms. Cole realized that she had an opportunity to make herself look sympathetic. And so she immediately called out that it was a robbery. And that's at page C329 of the record. And so that's why we responded to that argument on our brief. We assumed that was defendant's theory. Defendants also argued there's two plausible accounts of what occurred here. And again, I have to disagree. Defendant's account is not plausible. Ms. Cole's account and Ms. LaRoche's account line up completely and are plausible. So it's not just a credibility battle here between defendant and Ms. Cole, because we have other evidence. We have Sheila LaRoche, the independent Good Samaritan. And it's not true that Ms. LaRoche just saw defendant bump into Ms. Cole. She actually saw the entire robbery. So we didn't even need Ms. Cole. Ms. LaRoche saw defendant following Ms. Cole out of the grocery store. In her words, very, very closely behind her. As she continued to walk, he continued to follow very closely. And then she actually saw the robbery. She saw defendant take property from the person of Ms. Cole with force. And that's because she saw both the shove and the grabbing of the envelope. She was very clear in her testimony. She saw defendant shove Ms. Cole with his left hand and then grab what looked like paper from her purse with his other hand. And that was the cash envelope from the bank. So she saw a completed robbery. That's why she called 911. That's why she chased Mr. Miles down. And again, the trial court found she was independent with no connection to anyone else here. And so her testimony makes it clear there's no possible prejudice, even if defendant would have been allowed to ask Ms. Cole about this pending charge. Regarding Justice Ellis' question about the fact that this would have been an abuse of discretion ruling on whether this impeachment was permitted, I think that is very important here. It's important that defendant hasn't pointed to any case where this type of impeachment would have been permitted. There are plenty of cases that allow impeachment with a pending charge where the prosecuting entities are the same, because that allows a reasonable inference that the witness would have a motive to lie. But I don't know of any cases where it's been allowed, where it's an unconnected, separate jurisdiction. And as the trial court found here, there was no connection between the Cook County State's Attorney's Office that was prosecuting the defendant and the U.S. Attorney's Office for the Northern District of Illinois that was prosecuting Ms. Cole. So there's no reason under the triplet standard, there's no reasonable tendency to show a motive to testify falsely. And I would also note that in the way that abusive discretion standard works here, you need to look at it in conjunction with the Strickland standard, which is what defendant has to make his substantial showing of. On the first prong, he has to show that his attorney was so deficient in not asking Ms. Cole, isn't it true you have a pending mail fraud charge? He was so deficient from that single error that he was not functioning as an attorney at all. And so Mr. Miles effectively didn't have counsel under the Sixth Amendment. It is relevant to that determination. If it's a judgment call and abusive discretion that could go either way, then counsel certainly couldn't have been deficient in not asking the question. So it's our position that, of course, the trial judge's ruling was correct. The impeachment would have been improper. And so counsel wasn't deficient in failing to seek to do it. And had he sought to, it would have been disallowed. And so it wouldn't have turned out differently. So the court can rule on that deficient performance prong. But the court could also rule on the prejudice prong, which is somewhat easier because of the overwhelming evidence here. So even if we assume that a defendant could have asked Ms. Cole, isn't it true you're charged with mail fraud in the Northern District? And even if she said yes, there's no way that would have made any difference. Even if we further assume that that would have affected the way the jury looked at Ms. Cole's testimony because of the other evidence. And that's defendant's flight, which strongly suggests consciousness of guilt. And then the independent testimony of Ms. LaRoche. So regarding the flight, there's testimony from both Cole and LaRoche that defendant ran from the robbery scene. And he concedes that he was, in fact, arrested in the middle of the soccer field nearby. LaRoche gave a detailed account of this path he took through the parking lot, across the street, through another parking lot, through some buildings and onto a soccer field where there was a soccer practice. And there's an aerial map of that route in the record. And then she says that as people closed in on him, he raised his hands in the air and dropped to a knee and said, I give. And that's corroborated by the testimony of Officer Klimek, who arrested defendant and said he was, in fact, down on one knee in the middle of the soccer field. So those circumstances are very hard for defendant to explain if he did not, in fact, just rob Ms. Cole. So in addition to the flight, we've got, as I mentioned, Ms. LaRoche's independent eyewitness account of the robbery itself. She doesn't just see the shove. She sees the grabbing of the envelope. That's a robbery. That's why she calls 911. And defendant has no way around her testimony. So under either the performance or prejudice prongs, we think Mr. Miles has not made a substantial showing. And so the dismissal of his petition was proper, and we would ask the court to affirm. All right. Thank you. Justice Ellis, do you have questions at this time? Just a few. Good morning, counsel. Morning. I'm not entirely sure that I read the appellate briefs as you do. What I saw in the reply brief, at least, was Mr. Weiberg responding to your claim that his sequence of events and his theory was speculative. And he perhaps elaborated on it a little bit. Are you suggesting that the reply brief didn't mention any of the things that he's talking about today? Or are you saying reply brief is too late? No, I'm sorry. I meant to suggest that a couple of the theories that he outlined in his oral argument today appear to have not been raised in the opening brief. And just that what he said was a straw man argument was, in fact, our response to what he made in the district court. But no, we agree. We are arguing his theory is speculative, and he is disagreeing. You don't think it would have been a significant piece of evidence at trial, or I guess maybe not evidence, but impeachment? It wouldn't have been a significant moment at the trial if the defense could have confronted Ms. Cole with her federal charge and with some suggestion that in one way or another that is motivating her to testify falsely? You don't think that would have been a significant moment? Well, I want to split up those two things. What we're talking about is whether he could ask the one impeaching question that we disagree that it's impeaching, but he did have a good faith basis to ask, isn't it true you're facing a mail fraud charge? That's it. He would not have been able under any theory to go into the fraud, whether or not she was guilty, anything like that. So it would have been a very quick, isn't it true you have a charge? And she would have said yes. And then, of course, the people could have argued that she hasn't been convicted and we can't assume that she's guilty. So I don't think it would be significant. It would have been interesting. Maybe the jury would have taken note. But like I said, even if they had somewhat viewed Ms. Cole's testimony differently, there's really no chance of a different outcome, given all the other evidence. But why do you say that they could have only asked her the one question? I mean, if their theory was, I mean, they couldn't use it to show dishonesty, right? It wasn't a conviction. It was just an arrest. But if they could tie that into some theory of bias motive to testify falsely, either you were trying to garner sympathy by becoming a victim, you were trying to show the federal prosecutors what a good egg you are by working with state prosecutors, or you had falsely accused him, and once you had gone down that road, you were afraid to put the car in reverse because you'd look bad to the federal prosecutors. All of these things were theories as to how this crime would affect her standing with federal prosecutors. Why couldn't they have asked her questions of that nature? In order to ask a question that implies the premise of the question is true, Mr. Miles would have needed a good faith basis to believe it is true. He has not argued that he has one. So he couldn't say, isn't it true that you did this because you know the prosecutors take it easy on crime victims? He could only ask that if he had a good faith basis to believe that was true, and there's not even an allegation that he has that. So our position would just be limited to just asking about the charge itself. But how could he know that when he didn't even know it at trial? I mean, how could he establish from this record a good faith basis for thinking anything about Ms. Cole and a federal prosecution when nobody told him about a federal prosecution? Regardless of whether it's the defense counsel's failure to find it himself or the state's failure to show it to him initially, one way or the other, nobody knew about this at trial. So there's not going to be any kind of a record. I mean, isn't this the kind of case where you say, looks like this needs to get all buttoned up. Looks like everyone's got to get together, maybe put some people under oath, maybe make some arguments and figure out exactly where this was going to fall. How could he have a record in this case under these circumstances? I think we have to look back to what has been pleaded and alleged so far. So if the petitioner actually had a theory that this was a legitimate reason for Ms. Cole to lie, that prosecutors do take it easy on her, or she had some reason to think that, or that he knew the prosecutors were in communication, he could certainly have pleaded that in his petition, which was amended by counsel. He could certainly have supported it with affidavits, as he would have been required to do, or he could certainly have explained why those affidavits weren't required. But that's not his theory. His theory is based solely on the existence of the charge itself, because that's the only thing he's pleaded and supported. I know, counsel, but that's asking an awful lot of somebody doing a post-conviction petition when there is nothing in the record. Yeah, it would have been great if they could have gotten Ms. Cole to file an affidavit saying, yes, I was trying to curry favor with federal prosecutors. I mean, that would have been a slam dunk. But, you know, their whole point is none of this got developed at trial. We now have a significant piece of information that could arguably be relevant. Maybe not, you know, but certainly within the realm of argument. Isn't that why we have a third stage? I would say no, because we are at the second stage. Petitioner is counseled. His attorney did gather affidavits. If they wanted to pursue this theory that there really was some motive to lie here, other than just the fact of the pending charge, they could certainly have pleaded that. And his attorney was obligated to plead that and either support it with affidavits or explain why they weren't there and what evidence they sought to show. As it stands, defendant hasn't argued what he wants to show. He just is relying on the charge itself. And so that's a clear legal question that it couldn't have made a difference. Okay. Thank you, counsel. Justice Burke. Good morning, Ms. Stotz. How are you? Good morning. Okay. I understand there's no Brady claim now. I get it. But would the state normally have access to information regarding their victims such as this? I wish I could answer that. And I'm sorry, I do not know. All we have in the record is, you know, the defense attorney's affidavit saying he didn't get it. And I don't know if the state ever had it. And I'm sorry, I can't answer that. Okay. So you've never been in the trial court? I have not, Your Honor. Okay. And would you know if the state's attorney's office has a policy of Googling or doing anything with regard to their victims? I don't know anything about that either. I'm sorry. Okay. Thank you. No other questions. So I have a couple. It seems, Ms. Stotz, that you're relying on only one prong of the bases that an attorney is allowed to cross-examine about. And it's this motive to lie. Now, that's not really the only basis that courts use or that defendants could be allowed to use to cross-examine a witness against them. It's either an interest, a bias, or a motive to lie. So we're not just dealing with a motive to lie here, are we? Isn't it any interest or bias the witness may have? Those are three separate bases that give a defendant a right to inquire. We're just going off of what the defendant briefed in his opening brief, which my reading of that is that it was purely the motive to lie to evoke sympathy. And so that's all we've addressed here. But it's true. There are other theories in general. All right. Well, both of you have cited and actually rely on truth. What about Triplett? Triplett is an Illinois Supreme Court case. And it's very clear that a defendant can impute a witness by showing that the witness has been arrested or charged. But the bases are that the witness has any interest, bias, or motive to testify falsely. So to say that they haven't really suggested this, well, we're looking at it. So we're not limited here to determining whether a court can only determine whether this is a motive to lie. But one thing I want to go back to. You said that the only thing that the attorney would be allowed to do would be to ask the question, you've been charged with fraud and bribery. Is that your interpretation? Yes, Your Honor. All right. Well, I'm not so sure that I would agree with that. I think there might be some inquiry as to the fact that you have a pending charge in the federal district court in which you're accused of fraud and bribery involving about $100,000 worth of money. I don't know. But you think that that would be not something that a court would allow? Maybe I misunderstood. I do think that if this impeachment was allowed, and it's our position that it's not because it's not really impeaching. But if it was allowed based on what Mr. Miles has alleged, which is just the pending charge and no additional facts, he would be limited to asking about the charge. And as you say, he could maybe say, isn't it true you're charged with XYZ? The point I meant to make was that he couldn't suggest that, you know, Ms. Cole actually had some kind of deal with federal prosecutors if she didn't. And there's no evidence she did. He couldn't suggest that, you know, there's some rule about federal prosecutors being sympathetic to robbery victims because he has no evidence of that. He couldn't get into the details of the fraud and try to suggest that Ms. Cole actually committed the fraud. So we're just saying it would be a limited inquiry about the charge. Well, you do know that under Illinois law and U.S. constitutional law, that when asking about a pending charge, that the lawyer does not have to have, has to preface it beforehand with some question about the interest. Are you aware of that? Oh, yes, I agree. And the arrest doesn't have to relate to the pending charge. And it's in triplet. But the court said, the court does not, the defendant does not have to show before examining the witness that the witness has been promised leniency or that the witness expects to receive favorable treatment. That's the language out of triplet. Right. So that is, you said he has to have a good, well, all right. You said he has to have a good faith basis, but the triplet decision further says defense counsel is entitled to inquire into such promises or expectations, whether based on fact or imaginary. What does that mean? I think in general with impeachment, if you ask a question in a way that suggests it's true, you do need a good faith basis because otherwise you're misleading the jury. So in triplet, he couldn't say, isn't it true that you have a deal that if you testify here, your charges will be dropped? If that's not true, you don't have to inquire about whether there was a deal. But again, I would bring it back to the fact that what's at stake in triplet is the typical application of this rule, which is where the pending charge is from the same prosecutor's office as the case is from. And so there's a kind of a logical inference that anyone might think the witness might logically think, you know, if I help this prosecutor's office, maybe the same prosecutor's office will help me in my pending case. And so that's what we typically see. And so, you know, triplet is really to the side here because it's not this situation. And I would reiterate that defendant has not pointed to any case, which is like ours, any case where the pending charge is from an unconnected jurisdiction, and there is no direct evidence showing any link or motive to lie. So basically we're different from triplet. Well, the case you did cite actually the Pecoraro case, you didn't refer to any case that we could examine that says, because this was a federal charge, it wasn't something that could be asked of a witness. You didn't cite any cases to that effect, did you? No, I don't know that I found one that said it because people don't try to bring it up and litigate it in this context. It just falls under the general rule that, you know, there's no reasonable tending to show motive to lie when there's no connection to the other jurisdiction. But you didn't cite any case that says that. No, I didn't find a case. But you would agree that under Illinois law, under the right to cross-examine, that the defendant would have the right to inquire about a pending charge or an arrest, and that there's multiple cases where that was a state charge where the court reversed for not allowing that kind of cross-examination. Absolutely. We think it is clear where the charge is from the same jurisdiction. Okay. And that's because there's almost an automatic feeling that the witness would have something to gain, right? That's correct. It's the common sense inference there. Right. But so we should just throw that out when we're talking about a federal charge, that there's no possible interest or bias or motive because it's a federal case. Not that there's no possible, but there's not an assumption. There's not a presumption that you get to inquire because it gets into whether the theory is far-fetched. And what the cases say is that it can't be remote or uncertain. The defendant needs direct evidence. And so when we're not in the situation where it's the same prosecuting authority, he needs more than just the charge because here it is pure speculation without something more. Okay. I would read those cases regarding something being remote or speculative, maybe in terms of age or something. In this particular case, she was charged in 2007 with a multi-count federal indictment, alleging bribery and fraud in the amount of $100,000 over a 10-year period. I don't know that there was anything speculative or remote about the fact. And then within two years of that was when the robbery occurred. So I'm not sure I agree that this is some sort of speculative or remote charge. Would you agree that if you knew about this federal pending arrest that you would have had to turn it over? I don't know the state law discovery rules under Brady. And I'm sure that the policy of the office... Okay. I'm not talking about Brady. I'm just saying... I'm sure the policy as an office matter and an ethical matter is to over disclose. But technically, you know, the position is it's not material here. So it wouldn't have, of course, been a Brady. And maybe under other rules, I would think that it would have been disclosed. But again, I don't know the rules. And just as to the point about, you know, the connection, I think we have a finding here that there was no connection between the prosecutors. The trial court's opinion said the Cook County State's attorneys had no involvement in the prosecution. And so we do have a little bit more. We know there's no connection. And so to ask to impeach, you know, even despite that finding of no connection, that's why the defendant needs to point to something more. All right. Well, just one last area. The defense attorney here filed an affidavit in which he admitted that had he known about this information, he would have at least made the effort to try to impeach the witness. Isn't that showing incompetence there by his own affidavit? Ineffectiveness. The first representation. I'm not sure I understand the question. Just to say he would have... I'll rephrase it if you want. The lawyer for the defendant filed an affidavit and said this was part of the post-conviction petition that had he known about the prior arrest, he would have inquired. He would have made an effort to impeach at the trial had he known about it. I understand. And any zealous defense attorney would try to impeach on this. But the problem is he would have been overruled. The trial judge would have said, no, this is improper impeachment. And that was, if not conclusively correct, certainly not an abuse of discretion, certainly not the type of off-the-wall ruling that would make counsel deficient. And, you know, his affidavit can't go... It can go to the factual question of what he would have done, but it does not answer the legal question of whether he was deficient and whether there was prejudice. All right. Well, you haven't given us any case at all that says because it's a federal arrest or charge that the court would absolutely not allow this as impeachment. Correct. And what if... I mean, but at the same time, you don't have a single case that says because you have a pending federal charge, you can't use it to impeach a witness or anything that you've given us that even says that. So how is the court correct? Because the general rule is that a defendant is entitled to impeach with an arrest to show any interest, bias, or motive that witness may have. Well, I would cabin that rule and say that at least from my research, all the cases I found applying that type of rule are where the charge is from the same jurisdiction. You know, and again, this is just the performance prong. We still have a clear case on the prejudice prong. Even if counsel had asked this question, we have the disinterested eyewitness and we have defendant's flight from the scene. Given the testimony of Sheila LaRoche, there was no way that petitioner was not going to be convicted at trial. So on one prong or the other, his Strickland claim has to fail. And if you're wrong about that last contention, that because you have a witness and someone that testifies about observations, and then you have the defendant countering that with his belief about what happened, that it was a misunderstanding. You're saying that there's not even a reasonable probability that if a jury heard that this woman had a fraud and bribery charge pending involving $100,000 in cash, that that wouldn't make any difference at all to any jury. Correct. That's our position. Because of the flight and because of LaRoche, who is completely unconnected and told exactly the same story. Okay. All right. Justice Ellis, any more questions? If I could follow up on just one small point. Thank you, Ms. Stocks. Did I hear you say that the trial court made a finding that there was no connection between the Cook County State's Attorney's Office and the U.S. Attorney's Office in this case? Yes. The finding is on page four of the opinion. It says the Cook County State's Attorneys had no involvement in the prosecution of Ms. Cole in her federal case. So they cannot show a biased interest or motive for her to testify to the state. That's the finding I was referring to. Well, I mean, that's just the basic statement of the fact that it's a different jurisdiction, right? No. I think it goes farther to say they have no involvement. I read that to say they're not in communication with the federal prosecutors, so there's no link on that front. You mean no communication in this case? I mean, how could the post-conviction judge, I can understand a post-conviction judge saying something that we all basically know, which is federal prosecutors prosecute federal cases, state's attorneys prosecute local cases. But to the extent he went anywhere beyond that and talked anything specific about this case and whether there was any communication between the State's Attorney's Office and the U.S. Attorney's Office, how could the post-conviction judge possibly know that? How could he possibly have meant that? Because he has no record on which to base that. Well, I think we can look to the fact that defendant didn't plead or allege any involvement. So he has an attorney who's amended his petition and he's getting affidavits. And there's no hint in the petition of any connection or involvement. He's basing his case solely on the fact that the charge exists. And so I think it's a reference to the fact that defendant hasn't pleaded or alleged any connection. I see. Okay. Thank you very much, Ms. Stutz. Justice Burke, any more questions for Ms. Stutz at this time? All right. Mr. Weiberg, we're going to give you time for a brief rebuttal. Okay. Thank you, Your Honors. And I'll try to be brief and just address a couple of things. First of all, getting at a couple of the points that the state has made during their argument, I think it is important to remember, and I think that Justice Ellis kind of hinted at this at times and addressed this, but this is a failure to investigate case. Whether or not counsel ultimately, exactly what questions counsel would have ultimately been able to answer or ask, we don't know because counsel didn't investigate. And in order for counsel's decision to ask or not ask questions to be reasonable, they have to investigate first. And that didn't happen here. It's also worth noting that as Justice McBride brought up, we have the affidavit. And counsel was very clear, I would have used this to impeach. And I think that's significant here because counsel recognized the value of this here. And I think it's important to note that ultimately what we're talking about here is not a particularly complex legal inference. It's a very common sense inference. You're in trouble. Someone is going to be punishing you potentially. You want that person to feel sympathetic towards you. Now, exactly how far that goes and what else there might have been there to discover, we unfortunately don't know because it was not discovered because there was a failure to investigate. And that is simply something that would have to be resolved upon further proceedings once somebody actually had the opportunity to investigate this. However, as far as counsel brought up something about, would he be restricted to just asking, do you have this charge? I mean, off the top of my head, I can think of a number of questions that one might ask. Are you worried about that? Are you concerned about what is going to happen to you in that case? When do you expect those proceedings to come to an end? All questions that could be getting at exactly what is the motive and how present and immediate is the motive because we know that in fact, historically speaking, what happened, less than a year later, she went to trial and was convicted. And so we know she was right smack dab in the middle of this case. There is no way that this was not on her mind at the time that she's testifying in this case. I would also like to briefly address the issues regarding Ms. LaRoche and whether Ms. LaRoche somehow conclusively puts an end to this case. And the answer is she does not. As this court has observed many times, multiple witnesses see things different ways. A jury could believe Ms. LaRoche. A jury could believe that Ms. LaRoche actually did see Mr. Miles' hand go into the purse. A jury could think she saw somebody knock into somebody, she heard a woman scream. Maybe his hand was near the purse. We know he bumped into her, so he's right there. The purse was sitting right in the baby seat. So we know it's right there. Is it absolutely conclusive that she says she saw this? No, a jury is free to reach their own inferences and to determine whether they think that is accurate, whether they think that what's being said in this instance is not entirely 20-20. A jury gets to make those inferences and it ought to be able to do so with all of the relevant impeaching evidence before it. And I'd also like to briefly address the flight. Mr. Miles said he didn't run Ms. LaRoche and Ms. Cole said he did. Your Honors, we would say that, particularly in a situation like this, if we look at Mr. Miles' own testimony, if he did indeed run, the only inference to be reached from that is not that he just robbed someone. Another inference that Mr. Miles very plainly presented is, I am a black guy in an all-white neighborhood. I have a criminal record and somebody just started screaming that I robbed them. So I ran. That is a perfectly reasonable inference that a jury could also reach. And again, what we're talking about here is not whether all of the witnesses agree on everything. Of course they don't. What we're talking about is whether we have two plausible accounts that the jury could believe. And in point of fact, we have two plausible accounts of what happened. And a jury should have been able to assess the credibility of all of the witnesses in light of all of the relevant information. And unfortunately, because counsel did not investigate, that just did not happen in this case. Let me think. I think that largely addresses, as far as whether we are raising arguments that we didn't raise before, I can say for an absolute fact that we raised all of this in the reply brief. I certainly didn't view that as being anything beyond what was in the appellate brief. It was a response to the state's speculative arguments. And I don't believe that it was in any manner raising a new issue. We have continued to raise, as we do now, that this went to the witness's interest, motive, and bias while testifying. And these are some of the ways in which we think the record shows that that would have been relevant. If your honors don't have any questions, then I will simply... I'm sorry. If you're finished, I'll see if the other justices have any questions for you on your rebuttal. Justice Ellis. No, no questions. Thank you. Thank you for your rebuttal, sir. Justice Burke. No questions. Thank you. Mr. Weiberg, I have no other questions. We thank both of you, Mr. Weiberg and Ms. Stotz, for your presentations today. The case was well-argued and well-briefed, and we will take it under advisement. And thank you for participating today, and we appreciate it.